AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241



# UNITED STATES DISTRICT COURT
for the

DAVID M. KRUCHTEN
_____
*Petitioner*

)
)
)
)
)

Case: 5:25-cv-11345
Assigned To : Levy, Judith E.
Referral Judge: Altman, Kimberly G.
Assign. Date : 5/7/2025
Description: HC DAVID KRUCHTEN
V E RARDIN (SS)

v.

)
)

E. Rardin, Warden
_____
*Respondent*
*(name of warden or authorized person having custody of petitioner)*

)
)
)

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.   (a) Your full name:   DAVID MICHAEL KRUCHTEN

    (b) Other names you have used:   N/A

2.   Place of confinement:

    (a) Name of institution:   FCI-MILAN

    (b) Address:   Federal Correctional Institution
              P.O. Box 1000   Milan, MI 48160

    (c) Your identification number:   11744090

3.   Are you currently being held on orders by:

    ☒ Federal authorities      ☐ State authorities      ☐ Other - explain:

    _____

4.   Are you currently:

    ☐ A pretrial detainee (waiting for trial on criminal charges)

    ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime

    If you are currently serving a sentence, provide:

        (a) Name and location of court that sentenced you:
         Western District of Wisconsin   Madison, WI

        (b) Docket number of criminal case:   20-cr-010-jdp

        (c) Date of sentencing:   10/22/21

    ☐ Being held on an immigration charge

    ☐ Other *(explain)*: _____

    _____

    _____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.   What are you challenging in this petition:

☒ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☐ Other *(explain):* _____

_____

6.   Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court:  **Federal Bureau of Prisons**

(b)  Docket number, case number, or opinion number:  **1200672-A1 (Administrative Remedy)**

(c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed):*  **Calculation of First Step Act Time Credits (FSA FTC's)**

_____

(d)  Date of the decision or action:  **10/3/24**

## Your Earlier Challenges of the Decision or Action

7.   **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☒ Yes          ☐ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:  **BOP  FCI-MILAN**

(2)  Date of filing:  **5/16/24**

(3)  Docket number, case number, or opinion number:  **1200672-F1**

(4)  Result:  **Denial**

(5)  Date of result:  **5/31/24**

(6)  Issues raised:  **Start Date of earning time credits (FSA FTC's), method of calculating FTC's, and using FSA date to start RDAP Programming**

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____

_____

_____

(b)  If you answered "No," explain why you did not appeal:  _____

_____

8.   Second appeal

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☒ Yes            ☐ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:  BOP - Regional Office

(2)  Date of filing:  6/6/24

(3)  Docket number, case number, or opinion number:  1700672-R1

(4)  Result:  Denial.

(5)  Date of result:  7/2/24

(6)  Issues raised:  Start Date of earning time credits (FSA FTC's), Method of calculating FTC's, and using FSA Date to start RDAP Programming.

_____

_____

_____

(b)  If you answered "No," explain why you did not file a second appeal:  _____

_____

9.   Third appeal

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☒ Yes            ☐ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:  BOP - Central Office

(2)  Date of filing:  8/14/24

(3)  Docket number, case number, or opinion number:  1700672-A1

(4)  Result:  Denial

(5)  Date of result:  10/3/24

(6)  Issues raised:  Start Date of earning time credits (FSA FTC's), Method of calculating FTC's, and using FSA Date to start RDAP Programming

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____

_____

_____

(b) If you answered "No," explain why you did not file a third appeal:  _____

_____

10.     **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes                    ☒ No

If "Yes," answer the following:

(a)      Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes                    ☐ No

If "Yes," provide:

(1)  Name of court:  _____

(2)  Case number:  _____

(3)  Date of filing:  _____

(4)  Result:  _____

(5)  Date of result:  _____

(6)  Issues raised:  _____

_____

_____

_____

_____

(b)      Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes                    ☐ No

If "Yes," provide:

(1)  Name of court:  _____

(2)  Case number:  _____

(3)  Date of filing:  _____

(4)  Result:  _____

(5)  Date of result:  _____

(6)  Issues raised:  _____

_____

_____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____
_____
_____
_____

(c)     Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: _____

_____
_____
_____
_____
_____
_____
_____

11.   **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes          ☒ No

If "Yes," provide:

(a)     Date you were taken into immigration custody: _____

(b)     Date of the removal or reinstatement order: _____

(c)     Did you file an appeal with the Board of Immigration Appeals?

☐ Yes          ☐ No

If "Yes," provide:

(1)  Date of filing: _____

(2)  Case number: _____

(3)  Result: _____

(4)  Date of result: _____

(5)  Issues raised: _____

_____
_____
_____
_____
_____

(d)     Did you appeal the decision to the United States Court of Appeals?

☐ Yes          ☐ No

If "Yes," provide:

(1)  Name of court: _____

(2)  Date of filing: _____

(3)  Case number: _____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

> (4) Result: _____
>
> (5) Date of result: _____
>
> (6) Issues raised: _____
>
> _____
>
> _____
>
> _____
>
> _____
>
> _____

12.  **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes        ☒ No

If "Yes," provide:

(a)  Kind of petition, motion, or application: _____

(b)  Name of the authority, agency, or court: _____

(c)  Date of filing: _____

(d)  Docket number, case number, or opinion number: _____

(e)  Result: _____

(f)  Date of result: _____

(g)  Issues raised: _____

_____

_____

_____

_____

_____

_____

### Grounds for Your Challenge in This Petition

13.  State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

GROUND ONE:  The First Step Act (FSA) requires that the BOP shall award credits (FTC's) when an inmate's sentence commences. The BOP is violating the law by not doing this.

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

- The law (FSA) says you begin earning when your sentence commenced per 18 USC 3585(a)
- My sentence commenced 10/22/21
- The BOP ~~is~~ started awarding credits 12/27/21 when I arrived at FCI-Milan by redefining commencement in violation of the FSA.

(b) Did you present Ground One in all appeals that were available to you?

☑ Yes          ☐ No

GROUND TWO: The BOP's method of calculating FSA credits (FTCs) does not allow inmates to earn FTC's while in pre-release custody as the law requires.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

- The FSA states inmates continue to earn FTC's while in pre-release custody. BOP policy confirms this.
- The FSA Calculator released in September 2024 allows for earning credits while in pre-release custody
- The new FSA Calculator released in October 2024 does not allow inmates to earn while in pre-release custody as required by the FSA.

(b) Did you present Ground Two in all appeals that were available to you?

☑ Yes          ☐ No

GROUND THREE: ~~The~~ The BOP is not following the law that requires starting inmates in RDAP based on their proximity to release.

The BOP is now doing this.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

- The law states inmates should be evaluated for starting programming based on proximity to release.
- The FSA Conditional Placement Date shows when inmates will be released to pre-release custody based on non-discretionary FSA credits (FTCs)
- This date ensures inmates won't miss out on the chance to take recommended programs.

(b) Did you present Ground Three in all appeals that were available to you?

☑ Yes          ☐ No

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

GROUND FOUR: _____

_____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

_____

_____

_____

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes                    ☐ No

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did
       not:    No  _____

_____

_____

_____

### Request for Relief

15.  State exactly what you want the court to do:

① Order BOP to begin calculating my FTC's as of 10/22/21

② Order BOP to revert to FSA FTC Calculator from September 2024

③ Order BOP to correct my calculation to account for my
   carry-over programming days.

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

_____

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 7/30/25

_____
*Signature of Petitioner*

_____
*Signature of Attorney or other authorized person, if any*

Exhaustion - I filed an administrative remedy (or BP9) on these issues on 5/6/24. I continued to appeal denials until my final BP11 was denied on 10/3/24 by the BOP's Central Office. See Appendix A for my administrative remedy and the BOP responses. These remedies addressed when I should start earning FTC's (Ground 1), how to calculate my FTC's (Ground 2) and asked to use this date as the release date for starting RDAP (which has now been fixed). Staff here at the local level has been helpful, but their hands are tied as all these issues involve national policies.

Ground 1 - Start date for earning FSA FTC's
Introduction
   I am filing this pro se 2241 motion to challenge the way the BOP is calculating my First Step Act Earned Time Credits (FSA FTC's). The law clearly states I start earning credits the day my sentence commenced, 10/22/21, but instead the BOP started granting credits on the day I arrived at FCI-Milan, 12/27/21. This is based on the BOP relying on an unlawful definition of the date a sentence commences under using the statutory definition. This issue has been litigated in multiple other courts so far. The BOP lost in each case, but has not updated their policy. I am requesting that you order the BOP to re-calculate my FSA FTC's based on a commencement date of 10/22/21 which will award me an extra 30 days of FTC's.

Analysis
1. When Sentence Commences

The FSA, 18 USC 3632, explains the procedures for how FTC's are earned. The relevant parts are:

18 USC 3632(d)(4)
(A) - "A prisoner...who successfully completes evidence-based recidivism reduction programming or productive activities shall earn time credits as follows:
(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation or productive activities
(ii) A prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits

(B) Availability - A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed -
(i) prior to the date of the enactment of [the FSA]; or
(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a)

   As pointed out in Yufenyuy v. Warden (Lexis 40186), the above provisions show "when time credits can -and cannot- be earned" and "Construed together these provisions make it clear that prisoners 'shall' earn time credits, at the statutory rate, for all qualified programs in which they successfully participate except for the programs in which they participated while imprisoned either before the FSA was enacted, or in detention before the date when their 'sentence commence[d] under 3585(a).' "
   So the FSA is clear that your start date for earning FTC's is the day your sentence commences. The statutory definition for when a sentence commences is laid out in 18 USC 3585(a) as referenced in the FSA above. 18 USC 3585(a) defines commencement is as follows: "A sentence commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."
   Courts and the BOP itself have understood this to mean that if you are in exclusive federal custody, then your sentence commences on the day your sentence is imposed, because at that point you are in custody and you are awaiting transportation to your official detention facility. See Program Statement 5880.28 "If the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in exclusive federal custody...at the time of sentencing...the sentence commences on the date of imposition." If you are not in custody then it doesn't commence until you self-surrender, but in my case I was in exclusive federal custody at sentencing, so my sentence commenced on 10/22/21, the day my sentence was imposed. This date is even listed as my "start incarceration" date on my FSA Time Credit Assessment form.
   The BOP decided to create an alternative definition for when a sentence commences by writing the final rule for calculating FSA FTC's in 28 CFR 523.42(a) where they wrote "An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date an inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)."
   The beginning of this statement is correct, eligible inmates begin earning FSA FTC's after their term of imprisonment commences. The second half, however, the part in parenthesis, is not correct. This is an invented definition for defining commencement that does not match the statutory definition in 18 USC 3585(a) which is the statute specifically referenced by

the FSA in 18 USC 3632(d)(4)(B)(ii). The BOP cannot add an extra requirement to when a sentence commences (i.e. when you actually arrive to the facility). They can if you self-surrender, but not if you were in exclusive federal custody awaiting transportation as I was. My sentence had commenced two months before I arrived at FCI Milan.

Multiple courts in various jurisdictions have looked at this exact issue and all have ruled that the BOP was incorrect and that the BOP's new definition of when a sentence commences in 523.42(a) fails because it runs counter to the plain language of the FSA. Congress was clear that inmates start earning when their sentence commences under the statutory definition of commencement in 18 USC 3585(a). In each of these cases, the court has ordered the BOP to recalculate the effected prisoners FTC's starting at the correct date of commencement, for me the date of sentencing 10/22/21.  See Yufenyuy v. Warden (Lexis 40186), HuiHui v. Derr (Lexis 106532), Patel v. Barron (Lexis 174601), Jobin v. Warden (Lexis 60046), Borker v. Bowers (Lexis 88869), Sharma v. Peters (2:24-CV-158-RAH-KFP), etc. The latest case came from this circuit, the Eastern District of Michigan, Gale v. Rardin (Lexis 8739) and ordered the BOP to recalculate (the inmate has now been awarded the extra FTC's).

These courts have also recognized that not only is the BOP's new definition of when a sentence commences in conflict with the well established and FSA mandated definition in 3585(a), the new definition is fundamentally unfair. Some inmates are sentenced and quickly transferred to their official BOP facility and would therefore start earning FSA FTC's almost immediately. Others, especially during COVID, might be delayed multiple months through no fault of their own before they reach their official BOP facility, meaning they have to wait months before they start earning under the BOP's alternative definition of commencement. This creates a situation that prevents an inmate from earning on the whims of transportation and logistical issues. If the BOP used the correct definition of commencement, this wouldn't be an issue.

Despite the fact that every judge who has looked at this specific issue has ruled that the BOP is using an unlawful definition of when a sentence commences, this continues to be their policy. They cite this incorrect definition in my administrative remedy responses and the final reply from central office ends stating "Prior to your arrival at your designated institution, you were not eligible to earn FSA time credits." This is incorrect. As all these other judges have already ruled, inmates are eligible to earn when their sentence commenced, which for me was 10/22/21.

Even though the plain text of the FSA lays it out, if there was any doubt about congressional intent, we can look at the legislative history. As pointed out above, the language in the final law, 18 USC 3632(d)(4)(B)(ii), states that inmates start earning after "the date that the prisoner's sentence commences under section 3585(a)." But in the original version of the bill, this language instead said it starts after "moving to the Bureau of Prisons" (HR 5682). So clearly congress intended for inmates to be eligible to start earning at the point their sentence commenced and not when they arrived at their final designated facility or they wouldn't have changed the language.

## 2. Programming

The same final rule that creates a new commencement definition also lays out that there isn't any specific type of programming that earns you FTC's. As long as you are not refusing any recommended programming or getting infractions that put you at a medium or high recidivism risk, you are in "earning status" and receiving FSA FTC's. Part of the reason is because any "productive activities," even unstructured, count as programming (see 18 USC 3632(d)(4)(A)). A productive activity is defined in the FSA as any "group or individual activity that allows an inmate to remain productive." The BOP's Program Statement 5410.01 further explains that productive activities are "pro-social" activities such as "productive free time activities" including "recreation, hobby craft or religious services," "family interaction activities," "personal growth" or "community service."

While in county jail, I called my wife and children every day. I met weekly with psychology staff for counseling. I talked with my outside pastor weekly and also with the clergy employed by the county jail. I took Khan Academy classes on the tablets on a variety of topics from history to financial literacy and I did a workbook related to my offense provided by the county jail. I interviewed my extended family and wrote a book about our family genealogy and traditions. I also started creating puzzles and worksheets for my children that I eventually turned into a "Parenting from Prison" book which I donated to the parenting program here at FCI-Milan. All of this falls well within the definition of "productive activities" laid out in the FSA.

## Conclusion

I'd love to have been earning credits for the 21 months I spent in county jail waiting to be sentenced (because of COVID delays), but I understand the law doesn't allow for that. But for the two months between sentencing and arriving at Milan, my sentence had commenced, I was doing numerous things that would meet the definition of "productive activities" (counseling, academic classes, family engagement, church services), I was not refusing any recommended programs, I had no disciplinary infractions and I have always maintained a low or minimum recidivism score. I therefore have met all the requirements of the FSA and should have been earning FTC's since my sentencing date of 10/22/21 and i request that you order the BOP to adjust my FTC's accordingly with that starting date.

## Introduction

The current calculation methodology being used by the BOP to calculate inmates FSA Time Credits (FTC's) is fatally flawed. It violates the FSA law (18 USC 3632(d)(4)(C)), BOP policy and congressional intent. The BOP's original attempt at calculating FTC's was correct and lawful, but unfortunately they changed it in October 2024. Under the new methodology, inmates are not allowed to earn and apply FTC's during the time they are in pre-release custody, violating the law. I request that the court order the BOP to go back to their original calculation methodology. In addition, even under the current methodology, the algorithm calculating my days is incorrect and my FSA Conditional Release Date should be 8/5/2027, not 8/20/27. At a minimum I ask the court to have this error corrected.

## Controlling Authority

As I am challenging the BOP's interpretation and violation of a federal statute (18 USC 3632(d)(4)(C)), the controlling authority is the Supreme Court's decision in Loper Bright v. Raimando (Lexis 2882). In this decision, the court overturned Chevron deference and ruled that "agency interpretations of statutes....are not entitled to deference." Instead courts should "independently interpret the statute and effectuate the will of congress." The court also pointed out "statutes, no matter how impenetrable do-in fact, must-have a single best meaning" or the "reading the court would have reached had it exercised its independent judgment."

## Factual Background/History

1) The goals of the FSA were to lower recidivism and save money by reducing the prison population. (see Appendix B)
2) These goals were to be achieved by incentivizing inmates to do Evidenced Based Recidivism Reduction (EBRR) programs and Productive Activities (PA) to earn FTC's. This programming would lower recidivism and put low risk inmates in pre-release custody earlier, saving money that could be used on higher risk law enforcement priorities.
3) Inmates can earn 365 days of FTC's to be applied to reduce their sentence with the remainder of their FTC's (uncapped) applied towards additional pre-release custody. (18 USC 3624(g)(3))
4) Inmates earn FTC's both while in prison and while in pre-release custody. (see Appendix C for in depth background)
5) The BOP developed a forward-thinking calculation methodology for planning purposes so case managers do not need to either guess/hand calculate future credits or constantly re-submit inmates' pre-release custody packets each month when those inmates earn additional FTC's.
6) After years of development and testing, the BOP released this calculator in September 2024. It used the following methodology: They take an inmate's 85% Good Time Release Date, and subtract off any time the inmate has earned off their sentence from the FSA (capped at 365 days). This gives the FSA Projected Release Date (called "Conditional" if you haven't yet earned the 365 days). Next they determine your FSA Conditional Placement Date, or the date you are eligible to be transferred to pre-release custody. This is calculated by assuming you will continue to program throughout your sentence or your "full incarceration term" all the way to your "FSA Projected Release Date." This method matches every document the BOP had put out up until this point (see Appendix C)
7) One month later, in October 2024, the BOP said this calculator was a mistake and released a new calculator using a different methodology. The new methodology calculates FSA Projected Release Date the same way. For the FSA Conditional Placement Date, however, they use a different methodology. They take the current date and your end date and move both of them towards each other until they meet (for every 30 days you move forward in time, your end date moves backward 10 or 15 days depending on your earning rate).

## Statutory Interpretation

The question forming the basis of my motion is which calculation methodology is the correct interpretation of the FSA under Loper-Bright. There are two relevant clauses within the FSA that bear on this question:

## 18 USC 3632(d)(4)(A) and (C)

" A prisoner, except for an ineligible prisoner under subparagraph(D) who successfully completes evidenced-based recidivism programs or productive activities SHALL EARN time credits as follows"
"Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities SHALL BE APPLIED toward time in pre-release custody or supervised release."
## 18 USC 3624(g)(1)(A)
An eligible prisoner who can apply FTC's is one who "has earned time credits under [the FSA] in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment."

The BOP's current (October 2024) calculator relies heavily on a very narrow reading of 3624(g)(1)(A). By doing so, however, it blatantly violates 3632(d)(4)(C). As shown by my current FSA Time Credit Assessment (Appendix D), under this new calculation my FSA Conditional Placement Date (when I can transfer to pre-release custody) is 8/20/27. But then all the FTC's I earn between this date and the end of my sentence on 4/21/29 are completely worthless. I already have the maximum of 365 days off my sentence and I'm already in pre-release custody. So these FTC's will never be applied to anything. This directly violates 3632(d)(4)(C).

The original (September 2024) calculator did not have this issue. Under the original calculator (see Appendix E) my FSA Conditional Placement Date was 10/9/26, which took into account all my FTC's. As long as I continued to program while in pre-release custody, I would continue earning and all my FTC's would have value. Inmates were rightfully warned that this was not guaranteed. If I got into trouble, opted out or stopped programming, my credits would be re-calculated and I could be returned to prison. You could call this frontloading, but it is really just showing you the credits you will earn if you continuing programming and doing the right thing throughout your sentence. Like stated in the AG's FSA report it allows the BOP to "calculate and award

time credits for the full incarceration term" and it's no more front-loading than what the current calculator does by showing you your projected future FTC's (US Attorney General 2023 FSA Annual Report pg. 18). This method matched congressional intent (Appendix C) and the goals of the FSA that: 1) inmates would continue to be incentivized to program and lower their recidivism throughout their sentence and 2) the BOP would save money by transferring low risk inmates to pre-release custody earlier as a reward for programming.

The BOP will argue that while meeting 3632(d)(4)(C), the original calculation methodology violated 3624(g)(1)(A) and that's why they had to switch to the new methodology. I'll admit at first glance, it does seem that 3632 and 3624 seem to conflict with each other. But that does not have to be the case. They can work together and in fact that was the BOP's position for years until they decided on a more rigid interpretation of 3624(g)(1)(A). In the FSA Admission and Orientation Addendum released to inmates on 11/20/23, the BOP had a sample calculation (see Appendix F). This calculation matched the interpretation of the September 2024 calculation methodology. It showed a more reasonable interpretation of 3624(g)(1)(A) that allowed the two clauses of the FSA to work together. In the graphic accompanying the example they show that FTC's can be applied when the "maximum possible useable FTC's = remaining amount of time to serve." They didn't say they could only be applied when time earned = time remaining, but instead said they can be applied when the maximum possible time earned = time remaining. This is a reasonable interpretation of 3624(g)(1)(A) that allows for future credits earned while under pre-release custody to be given value and applied.

The FSA Admission and Orientation Addendum shows that these clauses of the FSA can work together. And they did in the original Sept. 2024 calculator. If, however, the court doesn't agree with the more expansive interpretation of 3624(g)(1)(A), then it is forced to choose which clause to give more weight to. It is 3632(d)(4)(C) that uses the mandatory language "shall be earned" and "shall be applied." This doesn't leave discretion. The Supreme Court has said that the word "shall" is "language of unmistakably mandatory character." (Hewitt v. Helms 459 US 460).

The Supreme Court has also said that statutory construction is a "holistic endeavor" and that rather than looking at a clause in isolation, courts should look for a reading "that is compatible with the rest of the law." (United Savings Assn of Texas v. Timbers of Inwood Forest 484 US 365). When looking at the FSA as a whole, and congressional intent, it doesn't make sense to use an interpretation that makes many of the FTC's useless and takes away any incentive to program while in pre-release custody. Under Loper Bright the court is required to look for the best reading of the statute, or in this case the best reading of how two clauses of the FSA can work together. The original Sept. 2024 BOP interpretation is the best reading to follow the law and match congressional intent. The new October 2024 calculator is not.

Conclusion

Post Chevron, the Supreme Court decision in Loper Bright requires courts to determine the "single best reading" to "effectuate the will of congress." Congress has made their will clear (see Appendix B/C). The BOP's original Sept. 2024 calculation methodology was the best interpretation of the FSA as a whole and congressional intent. The BOP and AG recognized this in numerous documents leading up to Sept 2024 (see App C). The Sept 2024 calculator puts emphasis on the law's mandatory language that these credits "shall be earned and applied." It follows their intent that FTC's are earned for all "30 -day increments in earning status" and that the "Bureau will calculate an inmates' PRD by assuming that an inmate will remain in earning status throughout his or her sentence , including while in pre-release custody." Finally, it incorporates Congress's intent that you can earn while in pre-release custody doing programs like TDAP and other counseling that Senator Cornyn argued "may be even more effective" than ones offered in prison (see Appendix C).

The switch to a new interpretation of the FSA that directly violates 18 USC 3632(d)(4)(A) and (C), cannot be the "single best reading" of the FSA as it makes these credits worthless, takes away incentives to do recidivism reducing programming and keeps inmates in prison longer at a greater cost. The 2023 AG FSA Annual Report starts off saying "The First Step Act of 2018 was the culmination of a bipartisan effort to improve criminal justice outcomes and reduce the size of the federal prison population." This report then closes with discussing a lack of any cost savings six years after passage "Because the Bureau's population rose over the past year, there was no reduction in its overall expenditures." Using the correct interpretation of the FSA would help fix these issues and I respectfully ask you to order the BOP to go back to the September 2024 calculation methodology that correctly interpreted the FSA.

Carry-Over Days and Miscalculation

Even using the misguided methodology of this new calculator, my date is still incorrect. The new calculator says my FSA Conditional Placement Date where time earned = time remaining is 8/20/27. But as you can see in Appendix G, this is incorrect. The calculation algorithm is not using the 28 carry-over programming days from when I switched from 10 to 15 earning days per cycle. Under their own methodology, by 8/5/27 I should have earned 625 FTC's and I will have 625 days remaining. Therefore 8/5/27 should be my FSA Conditional Placement date, not 8/20/27.

The appendix shows all the detailed math, but to simplify it, between the day I arrived at Milan (12/27/21) and 8/5/27, I will have 2,048 programming days. As a low/low(for my PATTERN Score), the first 180 of these days I will be at the earning rate of 10 days per 30 day cycle. This is six 30 days cycles and equals 60 FTC's. The final 1,868 days of programming I will be at the earning rate of 15 days per 30 day cycle, earning. This is sixty-two 30 day cycles and gives me an additional 930 FTC's. This gives me a total of 990 FTC's (60+930). After the first 365 are applied off my sentence, that gives me 625 towards extra pre-release custody. Because they BOP calculator is not incorporating the carry-over days between when my earning rate switches from 10 to 15 days, I lose 28 days of programming or 15 FTC's. They therefore say I only earn 610 additional FTC's and give me a date of 8/20/27. Even if I do not prevail on the calculation methodology argument above, at a minimum the court should order the BOP to correct my FSA Conditional Placement Date to 8/5/27.

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: **KRUCHTEN, DAVID M**   **11744090**   **G**   **MILAN**
   LAST NAME, FIRST, MIDDLE INITIAL.      REG. NO.      UNIT      INSTITUTION

Part A—REASON FOR APPEAL

I am asking for ~~two~~ corrections to be made to my FSA PRD. First, I am asking that my start date for when I begin earning credits be changed to the date my sentence commenced, 10/22/21. Secondly, I ask that staff calculate my "conditional PRD" or "date of max earned "FTCs" or "earliest conditional pre-release date" as outlined in the FSA Admission and Orientation declaration and then use this date of 4/16/26 to allow me to begin programming in RDAP. Please see attached rationale for my position. Thank you for your time.

_5/14/24_
DATE

_Dvd Kruchten_
SIGNATURE OF REQUESTER

Part B—RESPONSE

---

_____
DATE

ORIGINAL: RETURN TO INMATE

Part C—RECEIPT

_____
GENERAL COUNSEL

CASE NUMBER: _____

CASE NUMBER: _____

Return to: _____
   LAST NAME, FIRST, MIDDLE INITIAL.      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____
DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

Start Date - The FSA clearly states in 3632(d)(4)(B)(ii) that an inmate shall begin earning credits when "the prisoner's sentence commences under section 3585(a)." Then 3585(a) and Program Statement (PS) 5880.28 Ch.1 Section 3(b) state that if you are already in primary federal custody, your sentence commences the date of imposition, for me 10/22/21. The denial of my BP8 cites PS 5410.01 where the BOP has re-defined when a sentence commences to the date you arrive at your designated facility.

But the FSA is clear. The date to be used is when your sentence commences under 3585(a), again for me 10/22/21. This exact issue has been brought to court multiple times in different circuits and in each case the judge ruled with the inmate, stated that the BOP's definition of commencement in PS 5410.01 is incorrect. In each case the courts ordered the BOP to recalculate using the date I am requesting (see Patel v. Barron Lexis 174601, HuiHui v. Derr 106532, Yufenyuy v. Warden 40186, etc). Congressional intent is further seen since though the original bill, HR 5682, stated you begin earning when moving into the Bureau of Prisons, the final version of the FSA passed into law was changed to state you begin earning when your sentence commences under 3585(a).

Conditional Future Credits - For the second part of my request, since November of 2022 the BOP has put out multiple documents stating that a "conditional PRD" or "date of max earned FTC's" or "earliest conditional pre-release date" would be made available to inmates and staff for planning purposes. This date would show all the FTC's an inmate could earn during their entire sentence, including while in pre-release custody, if they stayed in earning status. This planning tool would let case managers and staff know when to fill out a RRC packet and when to start inmates in programming like LCP and RDAP. To date, this calculation has not been shown to us. Another tool shows how you can earn a year off through FTC's, but it doesn't show all the future FTC's you can earn towards extra halfway house/home confinement. The calculation I'm asking for is described in documents such as PS 5410.01 and numerous inmate bulletins. The FSA A&O Addendum released on Nov 20, 2023 even shows explicitly how it will be calculated, yet it is still described as "coming soon."
   Using the methodology explained in the A&O Addendum (see attached) my conditional PRD or date of max earned credits is 4/16/26. This does not include Second Chance Act time or any RDAP 3621(e) benefit. RDAP currently uses your regular PRD with credits earned or a projection of the one year off as the outdate to decide when to start programming. I ask that my 4/16/26 date be used which would mean I would start immediately (as others with later dates have already started). I am in a unique situation because due to the length of my sentence I will have a large amount of FTC's used towards home confinement. Without using this date, however, I will not have enough time to even complete the 9 month program. It is already too late to get any advantage from the 3621(e) RDAP benefit (which I don't qualify for anyway). The program is important to me and I want to make sure I am able to take it.

Response to my BP9/BP10 Denials:
Start Date - The response to my BP9 quotes the same incorrect definition for commencement I cited above that has been struck down by multiple courts (and continues to be since I originally filed - see Jobin v. Warden Lexis 60046, Borker v. Bowers Lexis 88869 where the judge notes that no court has agreed with the BOP's definition of commencement and "multiple federal judges [from at least 5 different jurisdictions] deemed the regulation invalid"). In the BP10 response it says I was not in "qualifying admission status" until I arrived, but this new terminology is nowhere in the FSA, it is not in the BOP regulation 523.42 nor is it in the BOP Policy Statement 5410.01. All the laws state you begin earning when your sentence commences, and the legal definition for that for me is 10/22/21.

Conditional Future Credits - The BOP's BP10 response did not even address this issue. From the BP9, it seems the BOP's position is that any earned FTC's beyond the year off, whether predicted or actually earned, can't be considered when deciding program start dates because of the fact that halfway houses may not have enough bed space. From a legal perspective, this runs counter to the FSA that says inmates shall get these credits (18 USC 3632(d)(4)(A)) and that the BOP "shall ensure their is sufficient pre-release custody capacity to accommodate all eligible prisoners" who have earned credits (18 USC 3624(g)(11)). From a common sense perspective it also doesn't work because it creates situations like mine, where someone who wants treatment and was recommended to take treatment may not have the chance to actually take it.
   While I'm asking for future credits to be considered as consistent with the Program Statement and A&O Addendum cited above, even without predicted credits, this policy doesn't work. Consider an inmate with a good time outdate of 3/1/28. If they have been incarcerated since the FSA went into effect in 2018 and had a low PATTERN score, they would have earned approximately 1,000 FTC's already. So after taking a year off their sentence (outdate to 3/1/27), they would still have around 1 year and 9 months of FTC's towards extra pre-release custody. Since RDAP uses the 3/1/27 date, this inmate would not be eligible to start the program at Milan (currently on 2026 outdates). But if this inmate was eligible for a year of Second Chance Act, then that year plus the year and nine months of FTC's means they are eligible to be transferred to pre-release custody immediately. Under this policy they simultaneously have too much time left to start RDAP and could leave for pre-release custody any day. Respectfully, this makes no sense and inmates like myself who want programming to improve themselves are falling through the cracks.
   The BOP seems to recognize this issue and I don't think I'm even asking for the BOP to do anything other than what they've said they were going to do since Nov 2022. In a recent email to case managers they were told not to try to calculate a date that shows future credits because the BOP is in the "final stages of development and testing" of this calculator and it will be available soon. But it's been "coming soon" for almost 2 years now. If the calculation I've done based on the A&O addendum is wrong, and this is denied, please show me the right way to do this calculation. As it stands now, my case manager doesn't say it's wrong, and none of the BP responses say it's wrong, it's just apparently not ready yet. But if that date is right, I ask that you allow staff at Milan to use it in order to start me in RDAP programming. Thank you.

**BP-229 RESPONSE**                                    **CASE NUMBER: 1200672-F1**

Your Request for Administrative Remedy (BP-229) dated May 16, 2024, has been reviewed.   You are requesting a recalculation of your Federal Time Credits and that all your projected Federal Time Credits (FTCs) be used to determine your RDAP start date.

A review of the issue(s) you raise in your BP-229 has been conducted. You claim that the number of Federal Time Credits that you have been awarded is inaccurate due to you not being given credit from the date of sentencing. First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) states "Because the ability to accrue time credits begins **after the inmate's current term of incarceration begins (e.g., the date the inmate arrives at or voluntary surrenders to their initially designated Bureau facility to serve their sentence)**, an inmate cannot earn FTCs during pretrial confinement, nor can they earn credits based on a prior incarceration. Further, an inmate cannot earn FTC when not in Bureau custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility, regardless of where they are housed, or once released to their supervised release term".

You are also requesting that all your projected Federal Time Credits be used to determine your RDAP start date. The application of Federal Time Credits towards pre-release custody is inconsistent and can therefore not be used to determining program participation eligibility. While the Federal Bureau of Prisons strives to award inmates with all FTCs earned, outside conditions such as community resources and available bed space hinder its ability to do so.

Accordingly, your request for Administrative Remedy is denied. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____                          _5/31/2024_
E. Rardin, Warden                                    Date

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number:**   1200672-R1

This is in response to your Regional Administrative Remedy Appeal received June 11, 2024, in which you request to have time credits pursuant to the First Step Act (FSA) applied correctly and also you request to receive Federal Time Credits (FTCs) from the commencement of sentence pursuant to the FSA.

We have reviewed your appeal and the Warden's response dated May 31, 2024.   The FSA allows eligible inmates to earn additional time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.   Records indicate you have earned 365 days of FTCs towards release and 40 days towards pre-release consideration. You were not in Bureau of Prisons' custody until November 8, 2021, at which time you were not in a qualifying admit status until December 27, 2021.   As such, inmates may not earn any FTCs while not being in a qualifying admission status.   Therefore, all your FTCs have been calculated in accordance with policy and you have a current FSA projected release date of April 21, 2029, via FSA Release. Accordingly, the institution's decision is supported.

Based on the above information, this response to your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

7/2/2024
_____
Date

_____
Andre Matevousian, Regional Director

Mr Fletcher received this packet
on 8-13-24, Any Questions call
ML, Counselor Gregory
734.439.1511 ex 5405

**Administrative Remedy No. 1200672-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal, wherein you request your start date of when you began to
earn  Federal Time Credits (FTCs) pursuant to the First Step Act
(FSA) of 2018 changed to the date your sentence commenced.

We have reviewed documentation relevant to your appeal and,
based on the information gathered, concur with the manner in
which the Warden and the Regional Director responded to your
concerns at the time of your Request for Administrative Remedy
and subsequent appeal.  Federal regulations and Program
Statement 5410.01 CN-2, First Step Act of 2018 - Time Credits:
Procedures for Implementation of 18 U.S.C. § 3632(d)(4), require
an inmate to be "successfully participating" in evidence-based
recidivism reduction (EBRR) programs or productive activities
(PAs) to earn FSA time credits.  "Successful participation"
requires a determination by BOP staff that the inmate has
participated in the EBRR programs or PAs that were recommended
based on the inmate's individualized risk and needs
assessment.  An inmate may not earn FSA time credits for
participating in EBRR programs or PAs that are not tied to the
inmate's individualized risk and needs assessment.  This policy
further states an eligible inmate cannot earn FTC when they are
in a designation status outside of the institution (e.g.,
outside medical trip, state or federal writ or escorted trip,
in-transit or at an in-transit facility, etc).  Prior to your
arrival at your designated institution, you were not eligible to
earn FSA time credits.

Accordingly, your appeal is denied.


_____10-03-24_____                 _T. Barnett_____
Date                               Timothy Barnett, Administrator
                                   National Inmate Appeals

Appendix B - Congressional Intent for FSA

As a sample see some of the quotes from the FSA congressional testimony:
Incentivizing Inmates to do Programming and lower recidivism:

   Senator Cornyn - "This is because the incentives in this program are really important. I think we, as human beings, all operated based on incentives, and the incentives for prisoners is to go through the programs, gain the earned credit so that they can be released ....in less confining conditions."

   Senator Goodlatte - "The FSA will incentivize prisoners to participate in EBBR programs, productive activities and jobs that will actually reduce their risk of recidivism."

   Senator Davis - "The president said that America is a nation that believes in second chances. The FSA gives those second chances...it also provides the incentives for this to work."

   Senator Durbin - "Basically it gives to those who are in prison an incentive to develop skills and training and education levels that will serve them when they leave in order to reduce recidivism...It says to those who truly want to turn their lives around that we are going to give you a chance to prove it."

Incurring Cost Savings to Prioritize:

   Senator Klobucher - Keeping low-risk inmates in prison results in "diverting money from more important public safety initiatives"

   Senator Grassley - "Locking up low-level offenders for needlessly long prison sentences diverts resources that are needed elsewhere to fight crime."

   Senator Cornyn - "It is important that we look at people who are at low risk of recidivism and low risk to public safety in the community  because what we can do is use the resources not to keep people like that behind bars unnecessarily. Focusing on the most dangerous criminals and keeping them behind bars, while providing relief to those who earned time credit, just makes sense." "I think we can be smarter about crime and produce better results at a lower cost." "We have an opportunity to conserve tax dollars."

   Senator Bass - The FSA will "save taxpayer dollars and dramatically reduce recidivism."

Appendix C - Proof Prisoners earn while in Pre-Release Custody per law, BOP policy and congressional intent

## A. Prisoners Earn Per the FSA Law

The FSA law is clear on this and the language is unambiguous. In the relevant statute it says:

18 USC 3632(d)(4)(A) -

"A prisoner, except for an ineligible prisoner under subparagraph(D) who successfully completes evidence-based recidivism reduction programs or productive activities SHALL EARN time credits as follows" It then goes on to explain who earns 10 days a month and who earns 15 days a month.

18 USC 3632(d)(4)(C) continues:

"Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities SHALL BE APPLIED toward time in pre-release custody or supervised release."

For further clarification, "prisoners" are defined in 18 USC 3635(4) as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the BOP." While serving your custodial sentence in an RRC or home confinement you still meet this definition of "prisoner."

Also 18 USC 3624(g)(2)(A)(i)(II)(bb) states that while in pre-release custody inmates are expected to "participate in evidence-based recidivism reduction programming or productive activities assigned"

Proof is summed up in the Federal Register (Vol. 87 No. 12 1/19/22 pg. 2711):

"Accordingly unless the inmate formally declines recommended programming addressing his or her unique needs, or is not participating in any activities, the assumption is that the eligible inmate will be earning Time Credits and fully participating in recommended programming."

## B. Prisoners Earn Per Congressional Intent

If there was any question as to the intent of the law and what congress meant when they passed it, members of congress quickly set the record straight. After the BOP originally issued a proposed rule saying prisoners in prerelease custody couldn't earn credits, they asked for public comment. Multiple members of congress wrote letters, all agreeing and solidifying their intent.

Examples from the Federal Register Vol 87 No. 12 1/19/22 pg. 2712:

John Cornyn (R- TX) and Sheldon Whitehouse (D - RI) - "Nor does the FSA distinguish between 'prisoners' who are serving their sentences in a BOP institution, in an RRC or on home confinement in describing the time credit program." "Allowing individuals incarcerated in an RRC to earn time credits by participating in EBRR's would further the purposes of the FSA." "There is no reason to believe that a program offered in an RRC will reduce recidivism any less than one offered to an individual in prison. In fact, such programs may be more effective."

Hakeem Jeffries (D- NY) - "Congress could have used a narrower definition or explicitly excluded certain categories of individuals based on where they serve their sentence, but it chose not to do so."

Members of Congress could not be more clear on their intent that prisoners in pre-release custody are earning FTC's.

## C. Prisoners Earn Per BOP Policy

Taking into account the law and congressional intent, the BOP passed the final rule in the Federal Register where they concluded:

"After carefully considering the comments received, the Bureau agrees that inmates in pre-release custody - whether in a residential re-entry center (RRC) or home confinement - are eligible to earn FSA Time Credits." (Vol. 87 No. 12)

This further became policy in BOP Policy Statement 5410.01 which states:

Pg. 16 - "The Bureau will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence."

Pg. 17 - "The Bureau will calculate an inmate's PRD by assuming that an inmate will remain in earning status throughout his or her sentence, including while in pre-release custody."

pg. 11 - " FTC's are auto-calculated based on 30-day increments in earning status." You are in earning status while in pre-release custody.



The Policy Statement was then explained further in the U.S. Attorney General's 2023 FSA Annual Report
    pg.18 "On November 18,2022 the BOP adopted a new Program Statement (5410.01) to implement the new rule"
        changes included were "Second the policy clarified that time credits could continue to be earned in community placement (i.e. home confinement or RRC). Individuals will be able to continue earning credit while in the community, so long as they continue to successfully comply with all the rules and procedures of prerelease custody."
    also "Finally the policy specifies that the BOP will calculate and award time credits for the full incarceration term"
    and "Earned time credits are now calculated at the initial stages of the individual's sentence with the presumption that the earned time credits will accrue throughout the term of incarceration."

This policy has remained consistent in numerous documents given to inmates since, including:
Living in the Community : RRC's and Home Confinement Handbook (March 2024)
    pg. 3 "To accumulate days and subsequently earn FTCs, an individual must be in active admission status. 'Admission' includes placement in a prison facility or a prerelease program."

Inmate Bulletin on FSA Received Nov 2022 -
    "Finally, you will be able to continue earning credit while in the community, so long as you continue to successfully comply with all the rules and procedures of pre-release custody."

First Step Act Admissions and Orientation Addendum Received 11/20/2023 -
    FAQ section - "Do I earn FTC's while in Halfway House and/or Home Confinement?"
        "Yes. As long as you continue to successfully program."

*New - Oct. 2024*
*Calculator*

# FSA Time Credit Assessment
### Register Number:11744-090, Last Name:KRUCHTEN

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 11744-090 | Responsible Facility: MIL |
| Inmate Name | Assessment Date.....: 11-02-2024 |
|   Last............: KRUCHTEN | Period Start/Stop...: 12-27-2021 to 11-02-2024 |
|   First...........: DAVID | Accrued Pgm Days....: 1041 |
|   Middle..........: M | Disallowed Pgm Days.: 0 |
|   Suffix..........: | FTC Towards RRC/HC..: 115 |
| Gender............: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 10-22-2021 | Apply FTC to Release: Yes |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-27-2021 | 07-23-2022 | accrue | 208 |

  Accrued Pgm Days...: 208
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 60

----------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 07-23-2022 | 11-02-2024 | accrue | 833 |

  Accrued Pgm Days...: 833
  Carry Over Pgm Days: 28
  Time Credit Factor.: 15
  Time Credits.......: 420

--- FSA Assessment(s) ------------------------------------------------

| # | Start | Stop | Assignment | Asn Start | | Factor |
|---|---|---|---|---|---|---|
| 001 | 12-27-2021 | 01-24-2022 | R-LW | 01-18-2022 | 08:18 | 10 |
| 002 | 01-24-2022 | 07-23-2022 | R-LW | 01-18-2022 | 08:18 | 10 |
| 003 | 07-23-2022 | 01-19-2023 | R-LW | 06-23-2022 | 07:17 | 15 |
| 004 | 01-19-2023 | 07-18-2023 | R-LW | 12-07-2022 | 18:34 | 15 |
| 005 | 07-18-2023 | 01-14-2024 | R-MIN | 06-20-2023 | 11:29 | 15 |
| 006 | 01-14-2024 | 07-12-2024 | R-MIN | 10-03-2023 | 18:53 | 15 |
| 007 | 07-12-2024 | 01-08-2025 | R-MIN | 04-18-2024 | 12:17 | 15 |

## FSA Time Credit Assessment

Register Number:11744-090, Last Name:KRUCHTEN

U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

```
--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only -----------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
11-02-2024. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.
```

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 365 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.

```
---
Projected Release Date: 04-21-2030
Projected Release Method: GCT REL
FSA Projected Release Date: 04-21-2029
FSA Projected Release Method: FSA REL
FSA Conditional Release Date: 04-21-2029
SCA Conditional Placement Days: 365*
SCA Conditional Placement Date: 04-21-2028*
FSA Conditional Placement Days: 610
FSA Conditional Placement Date: 08-20-2027
Conditional Transition To Community Date: 08-20-2026*
```
**\*Default SCA conditional placement days. This requires a five-factor review!**

*Original Sept. 2024*
*Calculator*

## FSA Time Credit Assessment
Register Number:11744-090, Last Name:KRUCHTEN

**U.S. DEPARTMENT OF JUSTICE**         **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 11744-090 | Responsible Facility: MIL |
| Inmate Name | Assessment Date.....: 09-04-2024 |
|   Last.............: KRUCHTEN | Period Start/Stop...: 12-27-2021 to 09-04-2024 |
|   First............: DAVID | Accrued Pgm Days....: 982 |
|   Middle...........: M | Disallowed Pgm Days.: 0 |
|   Suffix...........: | FTC Towards RRC/HC..: 85 |
| Gender...........: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 10-22-2021 | Apply FTC to Release: Yes |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-27-2021 | 07-23-2022 | accrue | 208 |

  Accrued Pgm Days...: 208
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 60

---

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 07-23-2022 | 09-04-2024 | accrue | 774 |

  Accrued Pgm Days...: 774
  Carry Over Pgm Days: 28
  Time Credit Factor.: 15
  Time Credits.......: 390

--- FSA Assessment ------

| # | Start | Stop | Status | Risk Assignment | Risk Asn Start | Factor |
|---|---|---|---|---|---|---|
| 001 | 12-27-2021 | 01-24-2022 | ACTUAL | FSA R-LW | 01-18-2022 0818 | 10 |
| 002 | 01-24-2022 | 07-23-2022 | ACTUAL | FSA R-LW | 01-18-2022 0818 | 10 |
| 003 | 07-23-2022 | 01-19-2023 | ACTUAL | FSA R-LW | 06-23-2022 0717 | 15 |
| 004 | 01-19-2023 | 07-18-2023 | ACTUAL | FSA R-LW | 12-07-2022 1834 | 15 |
| 005 | 07-18-2023 | 01-14-2024 | ACTUAL | FSA R-MIN | 06-20-2023 1129 | 15 |
| 006 | 01-14-2024 | 07-12-2024 | ACTUAL | FSA R-MIN | 10-03-2023 1853 | 15 |
| 007 | 07-12-2024 | 01-08-2025 | ACTUAL | FSA R-MIN | 04-18-2024 1217 | 15 |

--- Planning ------
Projected Release Date: 04-21-2030
Projected Release Method: GCT REL
FSA Projected Release Date: 04-21-2029
FSA Projected Release Method: FSA REL
FSA Conditional Release Date: 04-21-2029
FSA Conditional Placement Days: 925
FSA Conditional Placement Date: 10-09-2026
SCA Proposed Placement Days: N/A
SCA Proposed Placement Date: N/A

*Appendix F*

*FSA Admission & Orientation Addendum – pg. 10*
*Shared with inmates on TruLincs Bulletin Board 11/20/23*

## Do FTCs change my Home Confinement Eligibility Date (HCED)?

Yes and no. Your Home Confinement Eligibility Date is calculated based on your statutory term. FTCs do not impact the number of days making up the eligibility date – that block of days is the same regardless of FTCs earned. What changes is the date itself. This is because the eligibility date is based on the number of days prior to Projected Release Date, and as your release date changes (due to earned FTCs), the Home Confinement Eligibility Date also changes, but the block of days making up the statutory Home Confinement does not. Plus, once you earn FTCs toward early pre-release placement, the Home Confinement Eligibility Date is based on that same block of days, but in advance of the maximum number of FTCs earned.



*365 FTC Days*

*Interpretation of 3624(g)(1)(A)*

*Example*
*1 month until 1st PATTERN = 1×10 = 10 FTC's*
*6 months until 2nd PATTERN = 6×10 = 60 FTC's*
*23 months at 15 days = 23×15 = 345 FTC's*

*Earliest Possible Transfer to HH/HC*

*Home Confinement Eligibility Date*

*30 months → 415 FTC's*

For example, if you had 30 months to serve (after Good Conduct Time) and had a minimum or low Risk level from the beginning, you could earn up to 415 FTCs. You would also have a Home Confinement Eligibility Date of about 90 days. The first 365 FTCs are applied toward release, leaving you about 18 months to serve. If your unit team also recommended you for a 120-day prerelease placement under the Second Chance Act, that would be added to the 50 FTC days remaining for all total recommended pre-release placement of 170 days. But, because the Second Chance Act Placement is served first to include the 90-day Home Confinement Eligibility, you would have to serve at least 30 of your 120-day Second Chance Act placement in the halfway house before you could transfer to home confinement.

## How do unresolving pending charges and/or detainers impact me getting Time Credit?

As long as you are eligible to earn time credits, an unresolved pending charge and/or detainer has no impact. With the exception of inmates with final orders of deportation or removal – determinations made based on documentation provided by Immigration and Custom Enforcement (ICE), unresolved pending charges and/or detainers will not impact your ability to apply credit toward early release or pre-release placement.

However, it is important to understand that while you are eligible for halfway house and/or home confinement, placement in the community does NOT eliminate the outstanding detainers and/or pending charges. **Meaning - if you are in halfway house and/or home confinement and have detainers and/or pending charges, you are at significantly higher risk to be arrested due to active**

KRUCHTEN, DAVID 11744090

FSA Calculation for 8/5/27 (con't showing correct FSA Conditional Placement Date

Appendix G   pg. 1/2

## FSA Time Credit Assessment
### Register Number:11744-090, Last Name:KRUCHTEN

**U.S. DEPARTMENT OF JUSTICE**       **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 11744-090 | Responsible Facility: MIL |
| Inmate Name | Assessment Date.....: 02-21-2025 |
|   Last............: KRUCHTEN | Period Start/Stop...: 12-27-2021 to 8-5-27 |
|   First...........: DAVID | Accrued Pgm Days....: 2048 |
|   Middle..........: M | Disallowed Pgm Days.: 0 |
|   Suffix..........: | FTC Towards RRC/HC..: 625 |
| Gender..........: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 10-22-2021 | Apply FTC to Release: Yes |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-27-2021 | 7-23-22 | accrue | 208 |

208 — Accrued Pgm Days...: 208
-180  Carry Over Pgm Days: 0
28   Time Credit Factor.: 10
     Time Credits.......: (60)

FTC's
  60
+ 930
  990
- 365 (Year off)
  625

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 07-23-2022 | 8-5-27 | accrue | 1840 |

Accrued Pgm Days...: 1840
Carry Over Pgm Days: 28
Time Credit Factor.: 15
Time Credits.......: (930)

1840 Program Days
+ 28 Carry Over
1868 Total Days @ 15 Time Credit Factor

1868 ÷ 30 = 62 Thirty Day Cycles
62 × 15 FTC's = 930 FTC's

---

Program Days From 7/23/22 - 8/5/27

2022
  July - 9 days
  Aug 31
  Sep 30
  Oct 31
  Nov 30
  Dec 31
  162 Days

2023 - 365
2024 - 366 (leap year)
2025 - 365
2026 - 365
2027 - Jan 31
     Feb 08
     Mar 31
     Apr 30
     May 31
     Jun 30
     Jul 31
     Aug 5
     217 days

162  2022
+ 365  2023
+ 366  2024
+ 365  2025
+ 365  2026
+ 217  2027
1840 Days

Days Remaining from 8/5/27 - 4/21/29

2027 -
  Aug - 26 days
  Sep - 30
  Oct - 31
  Nov - 30
  Dec - 31
  148 Days

148
+ 366
+ 111
625 Days

2028 - 366 Days (Leap Year)
2029  Jan - 31
     Feb - 28
     Mar - 31
     Apr - 21
     111 Days

So on 8/5/27 I have earned 625 FTC's towards pre-release custody and have 625 days remaining. This should be my FSA Conditional Placement Date.

02-21-2025       (1)      Assessment# -2143813602

*Appendix G(Cont) pg 2*

## FSA Time Credit Assessment
Register Number:11744-090, Last Name:KRUCHTEN

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only ------------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
02-21-2025. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 365 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---

Projected Release Date: 04-21-2030
Projected Release Method: GCT REL
FSA Projected Release Date: 04-21-2029
FSA Projected Release Method: FSA REL
FSA Conditional Release Date: 04-21-2029
SCA Conditional Placement Days: 365*
SCA Conditional Placement Date: 04-21-2028*
FSA Conditional Placement Days: 610  ← *should be 625*
FSA Conditional Placement Date: 08-20-2027  ← *should be 8-5-27*
Conditional Transition To Community Date: 08-20-2026*  ← *should be 8-5-26*
**Default SCA conditional placement days. This requires a five-factor review!**

*As an easier way to calculate it. I will have 2,048 total
programming days between 12/27/21 and 8/5/27.*

*2,048*

*180
@ 10 days
per 30 days
= 60 FTC's*

*1868
@ 15 days
per 30 days
= 930 FTC's*

*990 FTC's*
*365 year off    625 towards HH/HC*

---
02-21-2025                    (2)                    Assessment# -2143813602

To Whom it May Concern,

Attached is my 2241 petition along with two copies. My family will be sending in the $5 filing fee separately. I also would like to ask if the court could appoint an attorney for me. I spoke to the public defender's office and they agreed to represent me if assigned. Thank you.

Sincerely,
David Kruchten
David Kruchten
11744090
Federal Correctional Institution
PO Box 1000
Milan, MI 48160



David Kruchten
11744090
Federal Correctional Institution
PO Box 1000
Milan, MI 48160

RECEIVED
MAY 07 2025
CLERKS OFFICE
DETROIT

RDC 03

Retail

U.S. POSTAGE PAID
PM
MILAN, MI 48160
MAY 02, 2025
$0.00
S2324P505163-46

CERTIFIED MAIL

9589 0710 5270 0756 3344 25

‹‹ 11744-090 ››
Office Of The Clerk
US District Court
231 W Lafayette BLVD
Fifth Floor
Detroit, MI 48226
United States

U.S. MARSHALS

# CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| **Case No.** 25-11345 | **Judge:** Judith E. Levy | **Magistrate Judge:** Kimberly G. Altman |

| **Name of 1ˢᵗ Listed Plaintiff/Petitioner:** | **Name of 1ˢᵗ Listed Defendant/Respondent:** |
|---|---|
| DAVID M. KRUCHTEN | E. RARDIN |

**Inmate Number:** 11744-090

**Additional Information:**

**Plaintiff/Petitioner's Attorney and Address Information:**

**Correctional Facility:**

FCI Milan

Federal Correction Institution
P.O. Box 1000
Milan, MI 48160
WASHTENAW COUNTY

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☒ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☒ IFP *In Forma Pauperis*
- ☐ PD Paid

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   - ☐ Yes     ☒ No
   - ➤ **If yes, give the following information:**

     **Court:** _____

     **Case No:** _____

     **Judge:** _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   - ☐ Yes     ☒ No
   - ➤ **If yes, give the following information:**

     **Court:** _____

     **Case No:** _____

     **Judge:** _____

MIED (Rev. 07/06)  Civil Cover Sheet for Prisoner Cases